**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DR. ANNE H. ZACHRY,<br>Plaintiff,<br><br>v.<br><br>DR. ASHLEY HARKRIDER, in her official capacity as Dean of the College of Health Professors for the University of Tennessee Health Sciences Center, and DR. PETER BUCKLEY, in his official capacity as Chancellor of the University of Tennessee Health Sciences Center,<br><br>Defendants. | ) | No. 2:26-cv-03017-SHL-cgc |

# ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff Dr. Anne H. Zachry's Motion for Preliminary Injunction, filed August 18, 2026. (ECF No. 8.) She seeks to enjoin Defendants—the University of Tennessee Health Sciences Center's ("UTHSC") Dean of the College of Health Professors, Dr. Ashley Harkrider ("Dean Harkrider"), and its Chancellor, Dr. Peter Buckley ("Chancellor Buckley")[1]—"from continuing to intentionally violate and deprive Dr. Zachry of her constitutionally protected property rights [in tenure] and retaliate against her protected speech by treating her as resigned." (ECF No. 8 at PageID 54.) UTHSC responded in opposition on September 1, 2026. (ECF No. 25.) Dr. Zachry replied a few days later. (ECF No. 27-1.) A hearing was held on September 11, 2026. (ECF No. 31.) For the reasons stated below, Dr. Zachry's Motion for Preliminary Injunction is **DENIED**.

[1] Because Defendants are sued in their official capacities, the Court refers to them together as "UTHSC" throughout this Order.

## BACKGROUND

This litigation arises out of Dr. Zachry's former employment as a tenured professor at UTHSC. Dr. Zachry was hired as UTHSC's Assistant Professor of Occupational Therapy in July 2013. (ECF No. 1 at PageID 3.) UTHSC appointed her as the Chair of the Occupational Therapy Department ("OT Department") in July 2015, and she earned tenure four years later. (Id. at PageID 4.)

Then, in early 2023, Dr. Pamela Lewis-Kipkulei began working as a tenure track faculty member in the OT Department.[2] (Id. at PageID 5.) Students complained about Dr. Lewis-Kupkulei's classroom conduct shortly after the semester began, and Dr. Zachry approached Dr. Lewis-Kipkulei and UTHSC's leadership with these complaints. (Id. at PageID 5–7.) Dr. Zachry contends that UTHSC's response was inadequate and did not address her concerns or the students' concerns. (Id.) The students' complaints continued over the next few years. (Id. at PageID 14.) So, too, did Dr. Zachry's attempts at resolving the students' concerns with UTHSC. (See id.) Based on these concerns, UTHSC placed Dr. Lewis-Kipkulei on an improvement plan in January 2026. (Id. at PageID 17; ECF No. 25-2 at PageID 205.)

The back-and-forth between UTHSC and Dr. Zachry came to a head the following month. It was then that Dr. Zachry and Dean Harkrider exchanged a series of letters via email which led to the end of Dr. Zachry's employment. These letters form the crux of the issue presented in the Motion for Preliminary Injunction.

[2] Dr. Lewis-Kipkulei is not the subject of this lawsuit. Rather, the fact that Dr. Zachry is no longer employed at UTHSC is what is at issue here. The background is therefore limited to only the relevant events surrounding Dr. Zachry's employment status. This distinction is important to note because the Complaint—and the parties at the preliminary injunction hearing—dedicate a disproportionate amount of facts to Dr. Lewis-Kipkulei and UTHSC's response to the various grievances about her. (See id. at PageID 5–19.)

## I. Letter Exchange

Dr. Zachry sent the first letter to Dean Harkrider on February 13, 2026. (ECF No. 8-1 at PageID 57.) It begins:

> I am writing with deep regret and a profound sense of responsibility to formally state my disagreement with the conclusions of the recent investigation report concerning Dr. Lewis-Kipkulei's conduct toward our occupational therapy students. After careful reflection, I have also made the difficult decision to request a brief leave of absence until a decision is made whether student mistreatment will be sufficiently addressed; a decision that will rest on whether the University decides to continue to permit Dr. Lewis-Kipkulei to have student involvement, whether her contract is renewed and, if so, under what conditions. I cannot, in good conscience, remain affiliated with an institution that fails to acknowledge or adequately address, what is, in my opinion, repeated and well-documented student mistreatment. . . .

(Id.) The next few paragraphs in the letter describe why Dr. Zachry felt that UTHSC had failed to adequately address the students' concerns about Dr. Lewis-Kipkulei. (Id.) Dr. Zachry's letter then concludes:

> I sincerely wish the University would reconsider its position, explicitly acknowledge the mistreatment that has occurred, and take decisive, transparent action to prevent its recurrence. Until that happens, I do not believe that I can continue in my role.
>
> If the Administration has already made the decision to renew Dr. Lewis-Kipkulei's contract at the end of the current term, with no action to be taken other than her Improvement Plan, I sadly submit my resignation with clarity and resolve and in the best interests of our students and the integrity of the profession we are entrusted to teach. I would appreciate the name and contact information of the individual at the University with whom I may discuss my early retirement options.
>
> If the Administration has not made such a decision, I would appreciate being advised when one is made and I will advise whether I intend to submit my resignation at that time.

(Id. at PageID 57–58.)

On February 18, 2026,[3] Dean Harkrider responded:

[3] The letter is dated February 19, 2026, but the parties agree that this was a typographical error.

> I received your letter dated February 13, 2026 and wanted to let you know that the University does not plan to non-renew Dr. Pamela Lewis-Kipkulei at this time. As you know, clear and thoughtful measures, with expected outcomes and deadlines, are in place to address concerns associated with Dr. Lewis-Kipkulei's teaching and communication style.
>
> . . . .
>
> In response to the inquiry about retirement and purported resignation in your letter, Debbie Long (deblong@uthsc.edu) is our University contact. Your resignation is accepted by the University, and it is both my hope and expectation that you will work with the University on a transition timeline that will support the educational needs of the many students that rely on your leadership and guidance.

(ECF No. 8-2 at PageID 60.)

Dr. Zachry replied that same day:

> I am in receipt of your letter dated February 19, 2026. I am writing to formally request a medical leave of absence, effective immediately, through at least April 1, 2026.
>
> Over the past several months, I have experienced significant health concerns. . . . At this time, my physicians have advised that I take a period of medical leave. During this leave, I will consult with my physicians and my family to determine whether I am able to return to work or whether retirement is the most appropriate course of action.
>
> Although your letter did not specifically address my prior request for medical leave, I trust that this request will be reviewed and processed in accordance with university policy. As suggested in your letter, I will be in contact with Debbie Long shortly and will work with my physicians to provide any required documentation to support this leave request.

(ECF No. 8-3 at PageID 62.)

Dean Harkrider followed up with another letter on February 23, 2026, which provides:

> I received your letter dated February 18, 2026, requesting medical leave through April 1, 2026. However, you resigned from your position in your letter dated February 13, 2026, stating, "If the Administration has already made the decision to renew Dr. Lewis-Kipkulei's contract at the end of the current term, with no action to be taken other than her Improvement Plan, I sadly submit my resignation with clarity and resolve." Your resignation was accepted by the University as indicated in my response letter sent to you the morning of February 18, 2026.

> To support the transition, the University will grant you administrative leave with pay pursuant to University Policy HR0355 starting today through June 30, 2026. June 30, 2026 will be your last day of employment with the University. . . .
>
> Finally, as a point of clarification, in your letter dated February 13, 2026, you asked for "a brief leave of absence until a decision was made" about your request in the letter to not renew Dr. Pamela Lewis-Kipkulei's faculty appointment. You were informed within a few days of your letter that Dr. Lewis-Kipkulei would be renewed. Accordingly, there was no prior request for medical leave that went unaddressed.

(ECF No. 25-2 at PageID 216.) There were no more letters exchanged between Dr. Zachry and Dean Harkrider after this.

On August 3, 2026, Dr. Cynthia Russell, UTHSC's Chief Academic Officer and Vice Chancellor for Academic, Faculty, and Student Affairs, sent a letter to Dr. Zachry stating that "[e]ffective today . . . your voluntary resignation from [UTHSC] takes effect." (ECF No. 25-1 at PageID 201.) Dr. Russell further explained:

> To support your transition and subsequent request for medical leave following the submission of your voluntary resignation, you were placed on administrative leave with pay through June 30, 2026, your effective resignation date per the UTHSC Faculty Handbook Section 8.1.1.
>
> Your administrative leave was extended from June 30, 2026 until August 1, 2026 while we attempted to negotiate an amicable resolution through counsel. It appears that we have reached impasse; therefore, this letter reaffirms the University's acceptance of your initial February 13, 2026 voluntary resignation.

(Id.) This lawsuit followed.

## II. Preliminary Injunction Hearing

Dr. Zachry sued Dean Harkrider and Chancellor Buckley in their official capacities here on August 7, 2026. (ECF No. 1.) She seeks declaratory and injunctive relief under 42 U.S.C. § 1983 and Ex Parte Young, asserting that she did not resign from UTHSC. (Id.) And because UTHSC is "treating" her as though she did resign, Dr. Zachry contends that she has been deprived of a clearly established property right—her tenured professorship—without due process

and that UTHSC has retaliated against her for engaging in protected speech. (Id. at PageID 29–32.) She seeks to be reinstated as a tenured professor with related benefits. (ECF No. 8 at PageID 54.) UTHSC opposes this request, arguing that Dr. Zachry "voluntarily resigned from her faculty position." (ECF No. 25 at PageID 151.) For that reason, UTHSC contends that it could not have violated Dr. Zachry's constitutional rights by merely accepting her resignation. (See id.)

A preliminary injunction hearing was held on September 11, 2026. (ECF No. 11.) The four letters discussed above were entered as exhibits. Dean Harkrider, Dr. Zachry, and Dr. Russell testified, which the Court recounts below.[4]

**A. Dean Harkrider's Testimony**

Dean Harkrider testified that she received Dr. Zachry's February 13, 2026, letter and interpreted it as a "clear" resignation from UTHSC so long as two conditions had been met.[5] Because those conditions—renewing Dr. Lewis-Kipkulei's contract and taking no further action related to complaints received about her treatment of students other than what was required of her improvement plan—had already been decided by UTHSC, Dean Harkrider accepted her resignation by response letter on February 18, 2026, with no follow up questions.

---

[4] As Dr. Zachry noted in her Complaint, there is only "one" issue in dispute here: whether Dr. Zachry resigned from UTHSC. (ECF No. 1 at PageID 1, 28.) Yet much of what was discussed at the hearing concerned matters that had nothing to do with that issue; namely, the internal friction at UTHSC that led to Dr. Zachry's February 13, 2026, letter. Perhaps that context will prove useful in later stages of litigation, but, for now at least, it is beside the point. The testimony described here thus relates only to what is relevant to resolving the question of whether injunctive relief is appropriate at this stage

[5] Dean Harkrider testified that she understood Dr. Zachry as resigning as both a tenured professor and as Chair of the OT Department.

Dean Harkrider also explained her February 18, 2026, response letter. She testified that she used the phrase "purported resignation" in her February 18th response because Dr. Zachry's resignation could only be "purported" until UTHSC "clarified" that her two resignation conditions had been satisfied. She further testified that the phrasing used in her response; namely, that "the University does not plan to non-renew Dr. Pamela Lewis-Kipkulei at this time," was consistent with the renewal language found in the UTHSC Faculty Handbook ("Handbook"). She expected Dr. Zachry to be familiar with this terminology because as OT Department Chair, Dr. Zachry would have been familar with the Handbook and the faculty renewal process.

Dean Harkrider further testified that it was "not possible" to "non-renew" Dr. Kipkulei in the middle of the 2026 academic term. Rather, as a third-year tenure track professor, Dr. Lewis-Kipkulei was entitled to a one-year notice period prior to removal. Dean Harkrider explained that the one-year notice period may be excused if a department chair or committee recommends a faculty member's non-renewal. But Dr. Zachry, who was Dr. Lewis-Kipkulei's Department Chair, had just given Dr. Lewis-Kipkulei a "positive" performance review in January 2026. For that reason, she was "surprised" that Dr. Zachry would have thought UTHSC could have non-renew Dr. Lewis-Kipkulei's contract at that time.

When asked why UTHSC placed Dr. Zachry on administrative leave after accepting her resignation, Dean Harkrider stated that granting administrative leave "is what you do" when professors resign. She also explained that extending a resigning professors administrative leave through June 30th is "normal" because that is when the academic calendar year ends. Dean Harkrider acknowledged that Dr. Zachry had requested medical leave on February 13, 2026, but

testified that there was no reason to provide her with medical leave because UTHSC already "decided" her resignation terms were satisfied.

Dean Harkrider further explained that, in early March 2026, she and Chancellor Buckley informed students at UTHSC that its Office of Compliance would be investigating Dr. Lewis-Kipkulei. Dean Harkrider testified that the investigation took place in response to formal student complaints UTHSC received after Dr. Zachry submitted her resignation letter. She also stated that Dr. Lewis-Kipkulei requested "to go on modified duties" in April 2026 and "pause" her "tenure clock," which UTHSC later granted. (See ECF No. 25-1 at PageID 196–99.)

**B. Dr. Zachry's Testimony**

Dr. Zachry's testified about why UTHSC, the OT Department, and academic tenure were important to her. She is an alum of the University of Tennessee and her position in the OT Department was "part of [her] identity." Based on the OT Department's importance to her, she was troubled by what she perceived as UTHSC "ignoring" students' complaints about Dr. Lewis-Kipkulei.

Turning to her February 13, 2026, letter, Dr. Zachry testified that she had only been writing in her "role" as OT Department Chair. She did not intend to resign from UTHSC; instead, she only intended that her letter would communicate her disagreement with how UTHSC handled complaints about student mistreatment. Dr. Zachry explained that she would not have written the letter if she knew that the Office of Compliance would later investigate student complaints or that Dr. Lewis-Kipkulei would later receive modified teaching duties.

As for her February 18, 2026, response to Dean Harkrider's letter "accepting her resignation," Dr. Zachry acknowledged that she had not expressly withdrawn or otherwise disavowed her alleged resignation. However, according to Dr. Zachry, her response indicated

that she was not resigning because she requested medical leave through April 1, 2026. She offered that date because she thought that was when UTHSC could decide whether to non-renew Dr. Lewis-Kipkulei's contract for the following academic year. But as Dr. Zachry explained, her request for medical leave through April 1, 2026, was a result of a misunderstanding of how the non-renewal process could apply to Dr. Lewis-Kipkulei. April 1st is the date that UTHSC decides non-tenure track renewals, but because Dr. Lewis-Kipkulei was in her third-year of her tenure track, Dr. Zachry conceded that her non-renewal would have required a one-year notice.

Dr. Zachry also testified that, before she submitted her letter, she had asked someone at UTHSC whether Dr. Lewis-Kipkulei could be "non-renewed." That person told her "no, tread lightly." Dr. Zachry agreed that she submitted Dr. Lewis-Kipkulei's evaluation on February 5, 2026, which stated that Dr. Lewis-Kipkulei needed "teaching improvement" yet "met expectations" and was "on track" with the tenure process.

### C. Dr. Russell's Testimony

Dr. Russell testified that she read Dr. Zachry's February 13, 2026, letter sometime before Dean Harkrider sent a response. She had "no doubt" it was a resignation because Dr. Zachry had stated, "I sadly submit my resignation with clarity and resolve." Dr. Russell also explained that UTHSC had already made the decision to "not" non-renew Dr. Lewis-Kipkulei by then and that there was "no reason" to think otherwise based on the recent evaluation provided by Dr. Zachry.

## LEGAL STANDARD

"The issuance of a preliminary injunction is the exception, rather than the rule." Higuchi Int'l Corp. v. Autoliv ASP, Inc., 103 F.4th 400, 404 (6th Cir. 2024) (citation omitted). Courts balance the following four factors when considering whether to grant a preliminary injunction: "(1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable harm to the

plaintiff in the absence of an injunction; (3) the risk that an injunction will harm others; and (4) the broader public interest." PCC Airfoils, LLC v. Daugherty, 176 F.4th 509, 512–13 (6th Cir. 2026) (citations omitted); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (referring to the third factor as the "balance of equities"). "Because a preliminary injunction is an extraordinary equitable remedy that is never awarded as of right, the plaintiff must make a clear showing that these factors favor [her]." EOG Res., Inc. v. Lucky Land Mgmt., LLC, 134 F.4th 868, 874 (6th Cir. 2025) (internal quotation marks and citation omitted). That said, the first two factors are the most important. If the plaintiff is "highly unlikely to succeed on the merits, there is little reason for a court to take the drastic step of enjoining the opposing party at the onset of a suit." Higuchi Int'l Corp., 103 F.4th at 404 (citation omitted). And if the plaintiff is not facing irreparable harm, there is "no need to grant relief now as opposed to at the end of the lawsuit." EOG Res., Inc., 134 F.4th at 886 (emphasis in original) (citation omitted).

## ANALYSIS

Dr. Zachry seeks to enjoin UTHSC from "treating her as resigned." But based on the testimony and evidence presented here, she has not carried her burden of clearly showing that the preliminary injunction factors support granting her such relief.

### I. Likelihood of Success

As Dr. Zachry noted in her Complaint, "[t]his is a very simple case" with only one question of fact in dispute: whether she resigned from UTHSC. (ECF No. 1 at PageID 1, 28.) Indeed, the answer to that question bears directly on her likelihood of success on the merits. If Dr. Zachry did not resign from UTHSC, then she was, in effect, terminated without due process and possibly retaliated against for speaking up about student mistreatment. But if the opposite is true, then UTHSC did not violate her constitutional rights by merely accepting her resignation.

For Dr. Zachry to meet her burden, she "'must show more than a mere possibility of success,' but need not 'prove [her] case in full.'" Ne. Ohio Coal. for Homeless v. Husted, 696 F.3d 580, 591 (6th Cir. 2012) (citation omitted). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 543 (6th Cir. 2007) (modification in original and citation omitted).

**A. Dr. Zachry is Unlikely to Succeed on Her Due Process Claim**

As a tenured public university professor, Dr. Zachry had a property interest in her continued employment with UTHSC. Kaplan v. Univ. of Louisville, 10 F.4th 569, 580 (6th Cir. 2021) (citation omitted). "However, if [she] resign[ed] of her own free will . . . then she voluntarily relinquishe[d] her property interest in continued employment, and [UTHSC] cannot be found to have deprived her of that interest without due process of law." See Rhoads v. Bd. of Educ. of Mad River Loc. Sch. Dist., 103 F. App'x 888, 894 (6th Cir. 2004) (citation omitted); see Medlin v. City of Algood, Tenn., 814 F. App'x 7, 15 (6th Cir. 2020) (similar).

All the evidence here points to Dr. Zachry voluntarily relinquishing her tenure. In short, she sent Dean Harkrider a conditional resignation letter on February 13, 2026. (ECF No. 8-1 at PageID 57–58.) The letter stated that she would resign if UTHSC had (1) "already made the decision to renew Dr. Lewis-Kipkulei's contract at the end of the current term," and (2) that decision was made "with no action to be taken other than her Improvement Plan." (Id. at PageID 57.) Because those two conditions had already been met at the time Dr. Zachry sent her letter, UTHSC did not violate her right to continued employment by accepting her resignation.

Despite this straightforward conclusion, Dr. Zachry presents several arguments to the

contrary. She argues that her February 13, 2026, letter was not a "clear and unmistakable" unconditional resignation.[6] And that even if her letter could be construed as a conditional offer to resign from UTHSC, her two conditions were not met on that date, rendering "any purported acceptance impossible." (See ECF No. 9 at PageID 72–76.) The Court next considers these arguments and others in turn.

### 1. The February 13, 2026, Letter Indicates a Clear Resignation

Dr. Zachry argued at the preliminary injunction hearing that her February 13, 2026, letter could not be construed as a "clear and unmistakable" waiver of her right to tenure. "The classic description of an effective waiver of a constitutional right is the 'intentional relinquishment or abandonment of a known right or privilege.'" Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 682 (1999) (citations omitted). "[C]ourts indulge every reasonable presumption against waiver." Fuentes v. Shevin, 407 U.S. 67, 94 n.31 (1972) (citation omitted). So, to find that a party agreed to waive a constitutional right through writing or contract, the evidence must show "clear and unmistakable language" that enables a court to infer a voluntary waiver. See J. Endres v. Ne. Ohio Med. Univ., 938 F.3d 281, 300 (6th Cir. 2019) (quoting Morrison v. Warren, 375 F.3d 468, 474 (6th Cir. 2004).

Dr. Zachry's February 13, 2026, letter indicates a clear intent to waive her tenure. Consider the relevant parts of her letter:

> **After careful reflection**, I have also made the difficult decision to request a brief leave of absence until a decision is made whether student mistreatment will be sufficiently addressed; **a decision that will rest on** whether the University decides to continue to permit Dr. Lewis-Kipkulei to have student involvement, **whether her contract is renewed and, if so, under what conditions**. **I cannot, in good conscience, remain affiliated** with an institution that fails to acknowledge or adequately address, what is, in my opinion, repeated and well-

[6] The Court incorporates the arguments that Dr. Zachry and UTHSC made at the preliminary injunction hearing but cites to their briefing where applicable.

> documented student mistreatment. . . .
>
> **If the Administration has already made the decision to renew Dr. Lewis-Kipkulei's contract at the end of the current term, with no action to be taken other than her Improvement Plan, I sadly submit my resignation with clarity and resolve** and in the best interests of our students and the integrity of the profession we are entrusted to teach. . . .
>
> If the Administration has not made such a decision, I would appreciate being advised when one is made and I will advise whether I intend to submit my resignation at that time.

(ECF No. 8-1 at PageID 57–58 (emphasis added).)

It is difficult to see how this language is anything but clear and unmistakable. The letter expressly states that "[a]fter careful reflection," Dr. Zachry chose to "submit [her] resignation with clarity and resolve" so long as two conditions were met. Those two conditions were clear: "if" (1) UTHCS "ha[d] already made" Dr. Lewis-Kipkulei's renewal decision with (2) no further action to be taken other the improvement plan, then Dr. Zachry "sadly submit[s] [her] resignation with clarity and resolve." But "if" those decisions had not been made, then she sought further clarification and reserved the right to "submit [her] resignation" at a later date.

Yet Dr. Zachry testified that she did not intend for UTHSC to construe these words as a resignation. She also explained that she had only been writing in her capacity as Chair of the OT Department and not a tenured professor. The plain language she used in her writing, however, undercuts whatever distinction she contends that she intended to communicate. Because her letter stated that she could not "remain affiliated with [the] institution"—which implies an intention to relinquish all ties with UTHSC—there was no basis for anyone to pick up on such nuance.

Her letter's effect on its readers further supports this finding. Both Dean Harkrider and Dr. Russell, the only witnesses at the hearing other than Dr. Zachry to testify, credibly explained

why they interpreted the February 13, 2026, letter as a "clear" resignation. And their testimony aligns with the Court's interpretation. For example, Dean Harkrider explained that nothing in the letter indicated that Dr. Zachry had any reservations about resigning. And Dr. Russell testified that she had "no doubt" Dr. Zachry's intended to resign given that she submitted her letter with "clarity and resolve." The more pressing question becomes whether Dr. Zachry's conditions were met when UTHSC accepted her offer to resign.

### 2. Dr. Zachry's Conditions Were Met on February 13, 2026

As mentioned, Dr. Zachry's resignation was contingent upon two things: (1) UTHSC "already [making] the decision to renew Dr. Lewis-Kipkulei's contract at the end of the current term"; and (2) UTHSC renewing Dr. Lewis-Kipkulei's contract "with no further action to be taken other than her Improvement Plan." (ECF No. 8-1 at PageID 57.) UTHSC, of course, could not accept her resignation if it had not made those decisions by February 13, 2026.

Starting with the first condition, the record shows that when Dr. Zachry sent her letter, Dr. Lewis-Kipkulei's contract was set to automatically renew in the upcoming academic year. Dean Harkrider testified to this, and Dr. Russell's Declaration states the same. (See ECF No. 25-1 at PageID 166.) What is more, Dr. Zachry presented no evidence that would enable the Court to conclude otherwise.

UTHSC's tenure-track policy and renewal procedures buttresses this testimony. (See ECF No. 25-1 at PageID 186, 191.) According to the Handbook, tenure-track faculty members at UTHSC are generally appointed for twelve-month academic terms, beginning on July 1st and ending on June 30th the following year. (Id. at PageID 166.) These appointments are automatically renewed for the following academic year unless a department chair or committee recommends what the Handbook described as "non-renewal." (Id. at PageID 186.) Dr. Zachry

was Dr. Lewis-Kipkulei's Department Chair, and she testified that she never recommended Dr. Lewis-Kipkulei's non-renewal. In fact, Dr. Zachry had just given Dr. Lewis-Kipkulei a "positive" performance in January 2026, which is why Dean Harkrider and Dr. Russell testified that they had "no reason" to think that Dr. Lewis-Kipkulei's contract would be non-renewed. Their testimony is credible, given this context.

Even if non-renewal had been recommended by Dr. Zachry in January 2026, Dean Harkrider testified that it would have been "not possible" to "non-renew" Dr. Lewis-Kipkulei's contract the following month. This non-renewal "impossibility" was due to UTHSC's policy providing tenure track professors with a notice period before non-renewal. As Dr. Lewis-Kipkulei was on the third-year of her tenure track, the Handbook provides that her "Notice of Non-Renewal" must be "not less than twelve months." (Id.)

Turning to the second condition—whether UTHSC had already decided to renew Dr. Lewis-Kipkulei's contract with no further action other than her improvement plan. Dr. Zachry stated in her Motion for Preliminary Injunction that she expected "action other than the improvement plan was taken as to Dr. Lewis-Kipkulei, such that UTHSC cannot satisfy the condition to any resignation." (ECF No. 9 at PageID 73.) To any extent that may be true, it cannot be found in this record.

To be sure, two actions related to Dr. Lewis-Kipkulei occurred after the February letter exchange. In early March 2026, UTHSC's Office of Compliance investigated Dr. Lewis-Kipkulei based on student complaints it received after Dr. Zachry resigned. And, on April 1, 2026, Dr. Lewis-Kipkulei requested "modified duties assignment" and the "pause" of her "tenure-clock," which UTHSC later granted. (See ECF No. 25-1 at PageID 196.) That said, both actions arose from incidents occurring after Dr. Zachry submitted her conditional

resignation. There is nothing in the record to indicate that either of these additional actions were contemplated or even on the horizon in February 2026.

In sum, the evidence and testimony here shows that on February 13, 2026, UTHSC planned on renewing Dr. Lewis-Kipulei's contract with no further action other than what was stated on her improvement plan.

### 3. UTHSC Properly Accepted Dr. Zachry's Resignation

Dr. Zachry also argues that, under Tennessee law, UTHSC's attempted acceptance "did not mirror the terms [her] purported contingent resignation was made on." (ECF No. 9 at PageID 68.) In other words, she contends that UTHSC failed to properly accept her resignation. Although she presents several nuanced arguments on this point, each lacks merit on this record.

Tennessee law requires an acceptance to match the exact terms of the offer.[7] O'Neil v. Clinically Home, LLC, No. M2013-01789-COA-R3CV, 2014 WL 3540840, at *8 (Tenn. Ct. App. July 16, 2014) (collecting cases). Any attempt to accept the offer on different terms qualifies as a rejection and cannot form an enforceable contract. Id. (citation omitted). For example, Tennessee courts have held that "[j]ust as one who receives an offer to enter into a contract cannot both re-write that offer and accept it, [an employer] cannot simultaneously re-write and accept a resignation from [its employee]." Id. at *5 (emphasis in original)

Relying on this holding,[8] Dr. Zachry argues that UTHSC "misconstrue[d] her conditional

[7] Tennessee law applies because "Tennessee law is dispositive of [a] plaintiff's claim of a property interest in continued employment arising out of a[] [] contract." Woolsey v. Hunt, 932 F.2d 555, 564 (6th Cir. 1991).

[8] Dr. Zachry tries to analogize her facts to those in O'Neil, but, if anything, O'Neil cuts against her position. There, the Tennessee Court of Appeals found that an employee was improperly terminated because his contract required certain written procedures to be followed. See id. at *7–8. Here, no contract, let alone Dr. Zachry's offer to resign, required UTHSC to follow any written formality when accepting that offer.

language as an immediate resignation" and was thus unable to accept a "resignation that she never offered." (ECF No. 9 at PageID 73–74.) So, according to Dr. Zachry, UTHSC could only accept her resignation if it first made and communicated "a final decision regarding Dr. Lewis-Kipkulei's renewal, the conditions of renewal, and the extent of any continued student involvement." (Id. at PageID 73.) Put differently, she is asserting that UTHSC did not have the power to simply accept her resignation even though the conditions she provided had already been met; rather, UTHSC was required to explain how her conditions were met.

This argument is a stretch given the plain language of Dr. Zachry's offer. Her February 13, 2026, letter submitted a resignation with "clarity and resolve" so long as UTHSC renewed Dr. Lewis-Kipkulei's contract with no action other than the improvement plan. End of story. She only asked for further information "[i]f the Administration has not made such a decision." But because the decisions regarding Dr. Lewis-Kipkulei had already been made, UTHSC was under no obligation to further explain itself.

Dr. Zachry next argues that UTHSC failed to accept her resignation because Dean Harkrider was unclear and "non-responsive." (See id. at PageID 73–74.) This contention also rests on thin grounds. On February 18, 2026, Dean Harkrider responded to Dr. Zachry's conditional resignation by stating, in relevant part:

> I received your letter dated February 13, 2026 and wanted to let you know that **the University does not plan to non-renew Dr. Pamela Lewis-Kipkulei at this time**. **As you know, clear and thoughtful measures**, with expected outcomes and deadlines, **are in place to address concerns associated with Dr. Lewis-Kipkulei's teaching** and communication style.
> . . . .
> In response to the inquiry about retirement and **purported resignation** in your letter, Debbie Long (deblong@uthsc.edu) is our University contact. **Your resignation is accepted by the University**, and it is both my hope and expectation that you will work with the University on a transition timeline that will support the educational needs of the many students that rely on your leadership and guidance.

(ECF No. 8-2 at PageID 60 (emphasis added).)

There is no doubt that this letter matches the terms of Dr. Zachry's resignation. Dean Harkrider communicated that (1) Dr. Lewis-Kipkulei would be renewed; (2) measures were in place, i.e., the improvement plan, to address Dr. Zachry's concerns; and (3) UTHSC accepts the resignation. Such acceptance is hardly "non-responsive."

Even still, Dr. Zachry picks apart Dean Harkrider's wording here. The first issue she raises is that Dean Harkrider stated that UTHSC "does not plan to non-renew Dr. Pamela Lewis-Kipkulei at this time," which, according to Dr. Zachry, is "dismissive" and fails to identify a "final decision." Perhaps a double-negative is not the best choice in writing. But it cannot be said that the phrase "does not plan to non-renew" is dismissive or misleading when read with UTHSC's policy in mind. The Handbook itself utilizes the "non-renewal" language. And the testimony from every witness at the hearing—including Dr. Zachry—showed that as OT Department Chair, Dr. Zachry should have been familiar with that language. Although Dean Harkrider did not write that it was 100% certain UTHSC would renew Dr. Lewis-Kipkulei's contract, she testified that she was merely explaining the current state of affairs and the decisions that had been made "at that time" based on the issues Dr. Zachry raised. She cannot be faulted for that; her cautious response was all that was needed here given that Dr. Lewis-Kipkulei's contract was set to automatically renew.

Dr. Zachry also contends that Dean Harkrider first referring to her resignation as "purported" shows UTHSC's "uncertainty" and therefore invalidates acceptance. (ECF No. 9 at PageID 74.) When taken out of context this argument may have legs. Dean Harkrider testified that she used the word "purported" because that was all Dr. Zachry's offer was until UTHSC clarified that her resignation conditions had occurred. To the extent Dean Harkrider's word

choice could be construed as uncertain, her next sentence unequivocally states: "Your resignation is accepted by the University." Taking this all together, there is no indication that UTHSC changed the terms of Dr. Zachry's offer or accepted anything other than the voluntary terms of her resignation. Dean Harkrider's February 18, 2026, letter was therefore a valid acceptance.

If Dr. Zachry had reservations or thought Dean Harkrider was unclear, she did not say as much in her February 18, 2026, response. Rather than rescinding her resignation, Dr. Zachry merely requested a medical leave of absence. (ECF No. 8-3 at PageID 62.) Although she testified this was because she intended to communicate that she was not resigning, her intentions fell on deaf ears. And that is because, if she had intended to take her resignation back, she said nothing of the sort. Dr. Zachry—no less this Court—can blame UTHSC for not reading between the lines there.

Finally, on February 23, 2026, Dean Harkrider wrote back reaffirming that Dr. Zachry's "resignation was accepted by the University as indicated in my response letter." (ECF No. 25-2 at PageID 216.) UTHSC then granted her "administrative leave with pay pursuant to University Policy HR0355 starting today through June 30, 2026." (Id.) Dr. Zachry implied at the hearing that being placed on administrative leave demonstrates that UTHSC never accepted her resignation. It does not. As the testimony at the hearing and Dr. Russell's Declaration provides, granting administrative leave to an outgoing professor was "consistent with the Faculty Handbook that requests resigning faculty members make resignations effective at the end of the academic year." (ECF No. 25-1 at PageID 166.)

All told, the evidence shows that Dr. Zachry relinquished her tenure. She has presented no evidence that warrants a different finding and has therefore failed to carry her burden of

showing that she is likely to succeed on the merits of her due process claim.

**B. Dr. Zachry is Unlikely to Succeed on Her First Amendment Claim**

At least for now, Dr. Zachry's First Amendment retaliation claim fails for the same reason. To establish a claim for First Amendment retaliation, a plaintiff must show that: "(1) [s]he engaged in protected speech; (2) the defendant took an adverse action against [her]; and (3) there is a causal connection between the protected speech and adverse action." Cooperrider v. Woods, 127 F.4th 1019, 1036 (6th Cir. 2025) (quoting Josephson v. Ganzel, 115 F.4th 771, 783 (6th Cir. 2024)). The alleged adverse action here is "treating Dr. Zachry as resigned." (ECF No. 9 at PageID 68, 75–76.) Given the weight of evidence showing that Dr. Zachry resigned, UTHSC did not subject her to adverse action by merely accepting her resignation. She is therefore unlikely to succeed on this claim as well. See, e.g., Kubala v. Smith, 984 F.3d 1132, 1139 (6th Cir. 2021) (finding no First Amendment retaliation where there was no adverse action).

**II. Remaining Factors**

The "failure to establish a likelihood of success on the merits is usually fatal to a plaintiff's quest for a preliminary injunction." Sunless, Inc. v. Palm Beach Tan, Inc., 33 F.4th 866, 868 (6th Cir. 2022) (internal quotation marks omitted) (quoting Enchant Christmas Light Maze & Mkt. v. Glowco, LLC, 958 F3d 532, 539 (6th Cir. 2020)). That said, the Court now considers the remaining preliminary injunction factors.

To suffer irreparable harm in the absence of an injunction, a plaintiff must demonstrate a type of harm that cannot be fully compensated by monetary damages. Overstreet v. Lexington-Fayette Urb. Cnty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002) (citation omitted). The harm must also be "'both certain and immediate,' not 'speculative or theoretical.'" D.T. v. Sumner Cnty.

Schs., 942 F.3d 324, 327 (6th Cir. 2019) (citation omitted).

It is well-established that the threat of a constitutional injury is irreparable harm. See, e.g., Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012). Indeed, "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." Id. (citation omitted). But Dr. Zachry is not entitled to such a presumption here because it is unlikely that UTHSC violated her constitutional rights. So, Dr. Zachry must show some other of type of irreparable injury for this factor to weigh in her favor.

In the employment context, "[t]he fact that an individual may lose [her] income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay." Overstreet, 305 F.3d at 579 (citations omitted). There are, however, situations where money alone will not provide an adequate remedy because "the nature of the plaintiff's loss would make the damages difficult to calculate." Certified Restoration Dry Cleaning Network, L.L.C., 511 F.3d at 550 (citation omitted). For example, lost work experience can be difficult to calculate and lead to an irreparable harm finding. See Johnson v. City of Memphis, 444 F. App'x 856, 860 (6th Cir. 2011). The same goes for the loss of "unique" or fleeting specialized job opportunities. See, e.g., Becton v. Thomas, 48 F. Supp. 2d 747, 763 (1999).

Picking up on this, Dr. Zachry argues that she faces irreparable harm because her unemployment has caused her to lose out on research projects and grant funding. (See ECF No. 27-1 at PageID 227–28.) Taken alone, this is the type of unique and difficult-to-calculate harm that generally warrants an irreparable harm finding. But whether she faces this harm necessarily depends on her likelihood of success on the merits. And given the tenuous grounds her claims currently rest on, Dr. Zachry's harm is speculative in so far as the injury she faces appears to be

brought on solely due to her own voluntary choices. Even if this factor favored her, injunctive relief does not follow solely because there may be a risk of irreparable harm. Cf. Higuchi Int'l Corp., 103 F.4th at 409 (declining to consider irreparable harm where the three remaining factors did not weigh in the plaintiff's favor). This is especially true where the likelihood of success "weighs strongly against a preliminary injunction." Id.

It follows that the balance of equities favors UTHSC. This factor turns "from the harms the plaintiff might suffer to the harms the defendant might suffer, and then ask[s] where the greatest harm would fall." EOG Res., Inc., 134 F.4th at 885–86. Although Dr. Zachry contends that "others would suffer little harm" if an injunction were granted (ECF No. 9 at PageID 79), her position is disconnected from the impact of the relief she is seeking. UTHSC has already replaced Dr. Zachry with another qualified professor and Dean Harkrider credibly testified that an injunction would disrupt the OT Department. This disruption—let alone the financial cost of reinstating Dr. Zachry in the middle of an academic semester—would impose substantial harm upon UTHSC. On balance, then, the tangible harm UTHSC may suffer outweighs any potential harm Dr. Zachry faces in losing out on grant and research opportunities.

The public interest similarly does not tip the scales in Dr. Zachry's favor. She argues that the public interest is "clearly best served" in protecting her constitutional rights. (ECF No. 9 at PageID 80.) But her argument assumes that her rights have been violated, which is highly doubtful here. The public has little interest in requiring a university to reinstate a professor who, at least for now, appears to have voluntarily resigned.

All told, at least three of the four preliminary injunction factors weigh against providing Dr. Zachry with such extraordinary relief. Dr. Zachry's Motion for Preliminary Injunction is therefore **DENIED**. See, e.g., Higuchi Int'l Corp., 103 F.4th at 409 ("Because at least three of

four preliminary injunction factors weigh against Autoliv, the 'extraordinary remedy' of a preliminary injunction is not warranted in this case." (citation omitted)).

## CONCLUSION

There is no doubt that Dr. Zachry regrets sending Dean Harkrider a letter on February 13, 2026. Her testimony at the hearing was heartfelt and it is clear that she has a passion for education and her students. But injunctive relief is an extraordinary remedy that requires more than sympathy alone. Among those requirements is her burden to show a likelihood of success on the merits. Because Dr. Zachry cannot show as much, it would be inappropriate to force UTHSC to hire her back during the pendency of this litigation. So, for the reasons stated above, Zachry's Motion for Preliminary Injunction is **DENIED**.

**IT IS SO ORDERED,** this 2nd day October, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE